# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

SANDRA I. HINMAN, )
)
               Plaintiff, )
)
v. )    Case No. CIV-09-136-F
)
MICHAEL J. ASTRUE, )
COMMISSIONER OF THE SOCIAL )
SECURITY ADMINISTRATION, )
)
               Defendant. )

## **REPORT AND RECOMMENDATION**

Plaintiff, Ms. Sandra I. Hinman, seeks judicial review of a denial of supplemental security income benefits (SSI) by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## I.    **Procedural Background**

Ms. Hinman filed her application for SSI on January 12, 2006. The Social Security Administration denied her application initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. *See* Administrative Record [Doc. #12] (AR) at 14-22. The Appeals Council denied Ms. Hinman's request for review. AR 6-9. This appeal followed.

## II. The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. The ALJ first determined that Ms. Hinman had not engaged in substantial gainful activity at any time relevant to the decision. AR 16. At step two, the ALJ determined that Ms. Hinman has severe impairments including depressive disorder, anxiety disorder, personality disorder and problems with left elbow and wrist due to fracture. AR 16. At step three, the ALJ found that Ms. Hinman's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 17.

The ALJ next determined Ms. Hinman's residual functional capacity (RFC):

[T]he undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can only occasionally climb stairs, balance, kneel, crawl, and bend or stoop; unable to climb ladders, ropes, and scaffolding; occasionally avoid extreme cold; and no power gripping, torquing or twisting with left hand. Mentally, the claimant is limited to simple repetitive tasks in an object oriented setting with no intense interpersonal contact with co-workers and supervisors, and no work with the public.

AR 18. At step four, the ALJ concluded that Ms. Hinman is unable to perform her past relevant work in sales and as a cashier. AR 21. At step five, the ALJ concluded that there are jobs existing in significant numbers in the national economy that Ms. Hinman could perform including office cleaner, press machine operator and production inspector. AR 21-22.

## III. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## IV. Issues Raised on Appeal

Ms. Hinman raises three issues on appeal: (1) whether the ALJ erred in eliciting vocational testimony based on a hypothetical question that did not reflect all of Ms. Hinman's limitations as assessed by the ALJ in his final decision; (2) whether the ALJ erred at step five of the sequential analysis by relying on vocational testimony that contains

unresolved conflicts with the presumptions in the *Dictionary of Occupational Titles* (DOT); and (3) whether the ALJ erred in failing to give specific, legitimate reasons for according little weight to the medical opinions of Ms. Hinman's treating psychiatrist.

V.     **Analysis**

    A.     **The ALJ's Hypothetical Questions to the Vocational Expert**

Ms. Hinman challenges the ALJ's decision at step five. She contends that the ALJ's physical RFC determination is not consistent with the hypothetical question to the vocational expert (VE). The ALJ found that Ms. Hinman's exertional capacity is limited to "light work." AR 18.[1]

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b). In his hypothetical question, however, the ALJ instructed the VE, to assume that the hypothetical individual retained the capacity to lift and carry "no more than 35 pounds occasionally, 20 pounds frequently." AR 598.[2]

---

[1]The ALJ also found nonexertional postural and mental limitations as discussed above.

[2]In the same hypothetical, the ALJ also asked the VE to assume the hypothetical person was limited to lifting "10 pounds with her left hand occasionally and no more than five pounds frequently with her left hand." AR 598. These additional limitations were not reflected in the ALJ's RFC determination, but were apparently considered by the VE when she testified as to work Ms. Hinman could still perform.

The Commissioner contends that reversal of the Commissioner's final decision is not warranted in this case because the jobs identified by the VE did not require strength beyond the exertional limitations identified in the ALJ's more restrictive RFC assessment. The variance, the Commissioner argues, is therefore inconsequential.

Ms. Hinman contends that this case should be reversed and remanded because the Commissioner essentially relied on a theory of harmless error without discussing or applying the harmless error analysis set forth in *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

In *Allen*, the Tenth Circuit noted that it had never applied the harmless error analysis where an ALJ had failed to make a dispositive finding of fact, even where the missing fact was clearly established in the record. *Id.* The Court explained, however, that a court could, in some exceptional circumstance, "supply a missing dispositive finding under the rubric of harmless error" where, "based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.*

In this case, unlike *Allen*, the ALJ's alleged error was posing a faulty hypothetical question to the VE. It is well established in this circuit that "testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (internal quotations and citation omitted).

5

Here, the hypothetical question posed to the VE did not accurately reflect Ms. Hinman's exertional limitations as ultimately assessed by the ALJ.

In *Wilson v. Barnhart*, 68 Fed. Appx. 169, 172 (10th Cir. 2003) (unpublished op.), the Tenth Circuit Court of Appeals addressed the ALJ's faulty hypothetical questions. After finding that the ALJ "may . . . have overstated Plaintiff's ability to respond to simple instructions when he informed the VE that Plaintiff has an 'unlimited ability' to respond to simple instructions," the Court found that the error was "immaterial" because there was "no evidence in the record that the jobs identified by the VE require any sort of heightened ability to respond to simple instructions." *Id.*

If the VE had clearly and correctly identified jobs which Ms. Hinman could do notwithstanding her limitations, this error, alone, would not require remand. As discussed in further detail below, however, the VE did not clearly and correctly identify jobs that Ms. Hinman could do. On remand the ALJ should carefully and accurately include all of Ms. Hinman's limitations in his hypothetical questions to the VE.

**B.      Unresolved Conflicts Between VE's Testimony and the DOT**

Ms. Hinman contends that the ALJ erred in relying on the vocational testimony proffered by the VE without resolving conflicts between the testimony and the information found in the DOT. The ALJ relied on the VE's testimony in determining at step five that Ms. Hinman could successfully make an adjustment to the demands of jobs existing in the regional and national economies.

"[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); s*ee also* Soc. Sec. Rul. 00-4p, 2000 WL 1898704 at *4 ("When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any conflict between that . . . evidence and information provided in the DOT.").

The VE identified three jobs which she said Ms. Hinman could do despite her limitations, and she gave DOT citations where descriptions of the jobs could supposedly be found. The VE testified that Ms. Hinman can do "light, unskilled office cleaning jobs" which she identified as DOT § 323.687-010. AR 599. She identified "light, unskilled press machine operator," which she stated was listed at DOT § 583.687-058.[3] AR 600. The last job identified by the VE was "production inspector" which she cited as DOT § 716.687-030. None of these DOT sections relates to the occupations identified by the VE. Section 323.687-010 is actually the description for the occupation of "Hospital Cleaner." Section 583.687-058 does not exist. Section 716.687-030 describes the occupation of "Lens-Block Gauger." It is clear that the ALJ relied on the testimony of the VE without investigating the actual requirements of the jobs identified or the number of these jobs available in the national economy.

---

[3]As discussed in further detail below, this number is incorrect. Moreover, the occupation of "Press-Machine Operator" is described at DOT 590-665-014 and requires medium strength.

The Commissioner does not rebut Ms. Hinman's contention that the two occupations identified by incorrect DOT citations cannot be considered when determining whether the ALJ's step five finding is based on substantial evidence. But the Commissioner does urge this Court to assume that instead of "Press-Machine operator," the second job identified by the VE, the VE intended to say "Press Hand," a job in the knitting industry listed at DOT § 583.687-010. The Commissioner would then have this Court supply its own factual determination that a significant number of Press Hand jobs exists in the regional and national economies. Such a result would be, however, "an improper exercise in judicial factfinding rather than a proper application of harmless-error principles." *Allen v. Barnhart*, 357 F.3d at 1145. On remand, the ALJ should investigate and resolve any conflicts between the testimony of the VE and the information found in the DOT.

### C. **Treating Physician's Opinion**

Dr. Linda Cummings began treating Ms. Hinman for psychological problems in June 2006. In her progress notes, Dr. Cummings noted that in April 2006, Plaintiff had received in-patient mental health treatment at Western State Hospital. Ms. Hinman reported numerous problems including living with a verbally abusive husband, isolating herself, and losing a son. Dr. Cummings diagnosed post-traumatic stress disorder, anxiety disorder characterized by agoraphobia, and depression. AR 477, 551-553. These diagnoses are reflected throughout Dr. Cummings' treatment notes. AR 471-477; 535-537; 544-553.

On May 12, 2008, Dr. Cummings completed a Mental Medical Source Statement. Dr. Cummings stated that Ms. Hinman's limitations are severe in the areas of ability to perform

activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to work in coordination with and proximity to others without being distracted by them; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and the ability to travel in unfamiliar places or use public transportation. Dr. Cummings found Ms. Hinman's limitations to be marked in the areas of ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration; ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to set realistic goals and make plans independently of others. AR 538-540. Dr. Cummings further explained that Ms. Hinman "is extremely affected by the proximity of other people" to the point that she becomes defensive and sometimes violent. Dr. Cummings also commented on Ms. Hinman's reliance on her husband to make even simple decisions and her inability to drive more than ten miles because of anxiety. AR 541.

The ALJ recognized that Dr. Cummings "is the claimant's treating psychiatrist at the Pawnee Indian Health Center" and briefly summarized Dr. Cummings' findings. AR 20. The ALJ then stated:

9

> This form is not consistent with the records as a whole and it is given little weight. Due to the numerous discrepancies throughout the record, the treating records from Dr. Cummings are given limited weight as well.

AR 20.

The ALJ gave "great weight," however, to the testimony of Dr. Bedwell, the medical expert who testified by telephone at Ms. Hinman's administrative hearing. AR 20. Dr. Bedwell had merely reviewed Ms. Hinman's medical records. AR 574. Dr. Bedwell testified that Ms. Hinman's impairments include depression, anxiety disorder, and personality disorder. AR 574. With no citation to the medical records, Dr. Bedwell testified that Ms. Hinman's impairments cause only moderate limitations and that she can perform simple tasks with routine supervision. AR 575-576.

A medical opinion from a treating source is generally entitled to more weight than the opinion of a non-treating source. *See* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). "Medical opinions" are defined as:

> statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.

20 C.F.R. §§ 404.1527(a); 416.927(a).

Using a sequential analysis to evaluate the opinions of treating sources, an ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. *See Watkins v. Barnhart*, 350 F.3d

1297, 1300 (10th Cir. 2003). If an opinion fails to satisfy either of these conditions, the ALJ must then determine what weight, if any, should be given to the opinion by considering (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1301. The ALJ must set forth specific legitimate reasons for completely rejecting an opinion of a treating source. *Id*.

For his opinion to be entitled to greater weight, however, the "treating physician" and the claimant must have a "relationship of both duration and frequency." *Doyal v. Barnhart* at 762. Such a relationship is necessary because the greater weight generally afforded to the opinions of "treating physicians" is based on the assumption that they can lend a "'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Id.* (*quoting* 20 C.F.R. § 416.921(d)(2)). The Tenth Circuit has explained:

> "The treating physician doctrine is based on the assumption that a medical professional *who has dealt with a claimant and his maladies over a long period of time* will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."

11

*Doyal v. Barnhart* at 762 (*quoting Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)) (emphasis added in *Doyal*).

The ALJ's cursory dismissal of Dr. Cummings' opinion, and even her treatment notes, is an error that requires reversal of the ALJ's decision and remand for further proceedings. Dr. Cummings, a psychiatrist, is an expert in the field of mental health care. For at least two years, she treated Ms. Hinman for mental health problems on a regular basis. Her opinion is consistent with her treating notes. The ALJ states that Dr. Cummings' opinion is not consistent with the record as a whole, but he does not point out where these inconsistencies lie.[4] Inconsistencies in the medical records are not apparent. On remand, the ALJ should apply the proper analysis to opinions of treating physicians.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further consideration consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. § 636 and Fed.R.Civ.P.72. Any such objections should be filed with the Clerk of the District Court by April 19th, 2010. The parties are further

---

[4]The only inconsistencies noted by the ALJ are alleged inconsistencies in statements made by Ms. Hinman in various documents throughout the record. AR 20. The ALJ fails to take into account that the record spans two years and that Ms. Hinman's situation could not be expected to remain static over a two-year period of time. Moreover, perceived inconsistencies in Ms. Hinman's statements are relevant only to her own credibility and are not sufficient reason for the ALJ to afford "little weight" to her treating physician's opinion.

advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this  29th  day of March, 2010.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE